INTERSTATE COMMERCE COMMISSION v. LAKE SHORE & M. S. RY. CO. et al.

(Circuit Court, N. D. Ohio, E. D. January 27, 1905.)

No. 6,521.

1. CARRIERS—INTERSTATE COMMERCE COMMISSION—LAWFULNESS OF ORDER.

An order of the Interstate Commerce Commission, based on a finding that the action of certain railroad companies in changing their classification by advancing hay and straw in car loads from the sixth to the fifth class was unlawful, commanding them to cease and desist "from classifying hay and straw in car loads as fifth-class freight, and from charging and exacting fifth-class rates for the transportation of such commodities in car load quantities," and requiring them "to wholly cease and desist * * * from failing and neglecting to properly classify hay and straw in car loads as sixth-class freight, * * * and from failing and neglecting to apply sixth-class rates for the transportation of hay and straw when shipped in car loads," is invalid as an attempt to fix rates and beyond the power of the commission.

**2. SAME—PROCEEDING TO ENFORCE ORDER—POWERS OF COURT.**

In a proceeding in a Circuit Court under section 16 of the interstate commerce act (Act March 2, 1889, c. 382, 25 Stat. 859 [U. S. Comp. St. 1901, p. 3165]), to enforce an order of the Interstate Commerce Commission, the court has no power to amend or modify such order, or to sever from the remainder a part which is illegal, but must enforce the same, if at all, in its entirety as made by the commission.

In Equity. Proceeding to enforce order of Interstate Commerce Commission.

John G. Carlisle, John J. Sullivan, U. S. Atty., and L. A. Shaver, for complainant.

Adelbert Moot, George C. Greene, George W. Wall, and Edgar J. Rich, for defendants.

WING, District Judge. In this cause the Interstate Commerce Commission files its bill against the Lake Shore & Michigan Southern Railway Company, the New York Central & Hudson River Railroad Company, the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, and the Boston & Maine Railroad Company. Many other railroad companies have intervened and become defendants, subject to the order to be made herein, and answers have been filed by all of the defendant companies. In addition to the proof taken before the commission, oral testimony was offered at the hearing. Most able argument has been heard in behalf of the complainant and of the several defendants.

The suit is authorized by section 16 of the act to regulate commerce, as amended March 2, 1889 (25 Stat. 859, c. 382 [U. S. Comp. St. 1901, p. 3165]), which provides as follows:

"Whenever any common carrier * * * shall violate or refuse or neglect to obey or perform any lawful order or requirement of the commission created by this act * * * it shall be lawful for the commission * * * to apply in a summary way by petition to the Circuit Court of the United States sitting in equity in the judicial district in which the common carrier complained of has its principal office, or in which the violation or disobedience of such order or requirement shall happen, alleging such violation or disobedience as the case may be; and the said court shall have power to hear and determine the matter on such short notice to the common carrier complained of as the court shall deem reasonable; * * * and said court shall proceed to hear and determine the matter speedily as a court of equity and without the formal pleadings and proceedings applicable to ordinary suits in equity, but in such manner as to do justice in the premises."

The cause, then, is in equity, but by a complainant in whose favor there exist no equities, except by virtue of the statute. The order, the enforcement of which is sought by this suit, is shown in Exhibit F, attached to the bill, and is as follows, with the omission of certain matter unnecessary to be quoted:

"This case being at issue upon complaint and answers on file, and having been duly heard and investigated by the commission, and the commission having, on the date hereof, made and filed a report and opinion herein containing its findings of fact and conclusions thereon, which said report and opinion is hereby referred to and made a part of this order:

"It is ordered, in accordance with said report and opinion, that the defendants * * * be, and they severally are hereby, notified and required to wholly cease and desist, on or before the 1st day of December, 1902, from

classifying hay and straw in car loads as fifth-class freight, and from charging and exacting fifth-class rates for the transportation of such commodities in car load quantities.

"It is further ordered, in accordance with said report and opinion, wherein the action of said defendants in increasing on January 1, 1900, the classification of hay and straw in car loads from sixth to fifth class, and the rates on said commodities in car loads from sixth to fifth class rates, and continuing to enforce such advance in classification and rates, is found and decided to be unlawful, that said defendants be, and they severally are hereby, notified and required to wholly cease and desist, on or before the 1st day of December, 1902, from failing and neglecting to properly classify hay and straw in car loads as sixth-class freight, with other articles included in class 6 of their freight classification, and from failing and neglecting to apply sixth-class rates for the transportation of hay and straw when shipped in car loads."

To understand the force of the order, it is necessary, first, to examine briefly into what is meant by "classifying," "classification," "fifth-class," "sixth-class," and "classification rates."

It appears, from the oral testimony of Clayton E. Gill taken before this court, that the system of classification adopted by the railroads was made effective about the date of the interstate commerce law, in 1887, and that it was entirely the result of the action of the railroad companies. An official classification committee, so called, was formed by representatives from various sections of the country, who were traffic officials of the various railroads. Since the organization of this committee to the date of the hearing, 24 different classifications have been made and filed. The territory with respect to which this particular committee arranged rates was that territory lying east of the Mississippi river and north of the Ohio, and has been designated as "official classification territory." In this classification there were six classes. The classification consisted in assembling into different groups various articles of freight habitually carried by railroads, and designating those different groups as numbered classes, from 1 to 6, and affixing to each class a different rate of freight. At the time the order of the commission was promulgated, it appears that 30 cents per 100 pounds was fixed as the rate for the carriage of articles included in the fifth class, and 25 cents per 100 pounds for articles in the sixth class. This action of the railroad companies in classifying freight was purely voluntary, and in no wise required by law. These public classifications, however, were the means used by the railroad companies of complying with the requirements of the interstate commerce act with respect to publishing rates.

Some time prior to the hearing before the commission, this classification committee had changed hay and straw from the sixth class, in which it had been retained for some years, to the fifth class. The action of the commission was instigated by a petition of the National Hay Association, filed with such commission, in which it was complained, in subdivision 8, as follows:

"That the fifth-class rates charged and exacted by defendants for the interstate transportation of hay and straw in car loads in said official classification territory are unreasonable and unjust. That the action of defendants in increasing the rates throughout said official classification territory on hay and straw in car loads from sixth to fifth class rates, and the whole of said

increase or advance in rates was unreasonable and unjust, and such advance in rates on hay and straw, and the whole thereof, is now unreasonable and unjust. That the defendants, by charging and demanding said fifth-class rates on hay and straw in car loads and by making and maintaining the advance from sixth to fifth class rates aforesaid, have subjected all producers, merchants, shippers, and consumers of hay, including the members of this complaining association, the traffic in hay and straw, and numerous localities and hay-producing sections of the country, to unjust discrimination and undue and unreasonable prejudice and disadvantage. That the defendants, by making and maintaining the advance in rates on hay and straw aforesaid, have worked and given, and are giving, undue and unreasonable preference and advantage to the production, sale, and shipment of grain and grain products, and all kinds of stock feeds and other articles capable of being used in the place or stead of hay or straw, many persons engaged in the production, sale, and shipment thereof, and of localities and sections of the country wherein the same are produced or manufactured. That the defendants, by making and maintaining the advance in rates on hay and straw as aforesaid, have unjustly discriminated against and wrongfully put to prejudice and disadvantage those descriptions of traffic in favor of and to the unlawful preference and advantage of all other descriptions of traffic, and particularly such kinds of traffic as are given by them the same rates as or lower rates than those enforced by them on hay and straw. That the defendants, by acting as aforesaid, have been, since the 1st day of January, 1900, and are now, violating sections 1, 2, and 3 of said act to regulate commerce."

From the decision of the Interstate Commerce Commission, it appears that it had principally under consideration the claimed impropriety of the action of the classification committee, and the adoption thereof by the railroad companies made defendants, in the advance in classification of hay and straw made on January 1, 1900. It is said, on page 304 of the opinion of the commission, which is made a part of the order:

"If it be assumed, however, that some valid reasons existed for increased revenues to the defendants, we are nevertheless dealing with a case where the relation of rates as between hay and straw and other commodities is a chief matter for consideration, and this involves the recognized legal duty of the carriers to so classify traffic and fix charges thereon that the burdens of transportation shall be reasonably and justly distributed among the articles they carry."

And again, on the same page:

"If the defendant carriers had advanced all of their class rates, in case of complaint against the increased rate upon any particular article the reasonableness of such higher charge might well have been the principal question; but what these defendants did on January 1, 1900, was to increase the classification rating and consequently the rates upon numerous commodities selected by them from the classification, including hay and straw, and by such action they laid themselves open to the additional charge of having subjected such higher rated traffic and those interested in it to undue prejudice and unjust discrimination. Proceeding now to the particular questions in this case, the first point for consideration is whether the advance in the classification and rates on hay and straw was reasonable."

The defendants object to a decree in this cause against them, first, for the reason that the order made by the commission is not a lawful order, in that it is an attempt to fix rates. It is undoubtedly the law, as shown by ample authority, and was so conceded at the hearing, that the commission has no power, directly or indirectly, to make an order fixing rates to be observed in the future. The order made by the commission, and sought here to be enforced, undeniably

undertakes to fix a rate for the carriage of hay and straw, by ordering that the defendant companies shall cease and desist from failing and neglecting to properly classify hay and straw in car loads as sixth-class freight, with other articles included in class 6 of their freight classification, and from failing and neglecting to apply sixth-class rates for the transportation of hay and straw when shipped in car loads. There is another provision of the order, to the effect that the railroad companies shall cease and desist from classifying hay and straw in car loads as fifth-class freight, and from charging and exacting fifth-class rates for the transportation of such commodities in car load quantities.

The part of the order first quoted, if it is an attempt on the part of the commission to fix rates for the future, is unlawful; and the question which arises is as to whether or not the fact that a part of the order is unlawful renders the whole order unlawful. The order of the commission which directs that the defendants shall cease and desist from keeping hay and straw in the sixth class is either an order that hay and straw shall be carried for the same rate of freight as other articles in that classification, no matter what the rate may be, or it is an order that the rate of 25 cents per 100 pounds shall be the freight charge for the carriage of hay. The opinion of the commission, and its findings of fact, are to the effect that any higher freight charge than that which, at the time of the decision, was attached to the sixth class, was unreasonable. At the end of the opinion, it is said:

"We are of the opinion that the defendants are mistaken in believing that hay and straw were improperly classified and carried by them as sixth-class freight, and that their action on January 1, 1900, whereby those commodities were raised to fifth class and thereafter charged fifth-class rates was unreasonable and unjust."

It is to be gathered, then, from the opinion and the findings of fact of the commission, that any action by the railroad companies, other than that of keeping hay and straw in the sixth class, would not satisfy the order of the commission. It is no province of this court to sit in review of the order of the commission. This hearing is de novo, and this suit, as has been stated, has for its purpose the enforcement of a lawful order of the commission. If no lawful order has been made, there is no order to enforce.

It is urged, on behalf of the commission, that the court may enforce a part of the order only; that the order of the commission is severable, and, in analogy to the rulings with respect to contracts and statutes, that the question whether the whole instrument, or only a part, is void, depends on whether the invalid part is severable from the rest. If the one cannot be severed from the other, the whole is void; but, if it be severable, the bad part may be rejected and the good retained. The question arises: Can the first part of the order, which directs the defendants to cease and desist from keeping hay and straw in the fifth class, and charging the rates attached thereto, stand alone, without support from the last part of the order, which directs that hay and straw shall be placed in the sixth class, and be subject to the freight rate attached to that

class? If only the second part of the order had been made, it would have included the first. An order that hay and straw shall be put into the sixth class contains within itself an order that it shall be taken from the fifth class, since commodities cannot be in two classes at the same time, any more than a physical object may be in two localities at the same time. It seems plain, from the opinion of the commission and its findings of fact, that what was sought to be done was to remedy what appeared to the commission to have been the unlawful conduct of the defendants, to wit, the raising of hay and straw from the sixth class to the fifth. The order, therefore, was adapted to compel the railroads to reverse their action, and restore hay and straw to the sixth class. Everything in the opinion and findings of fact of the commission indicates that it intended the order to be treated as an entirety. The prayer of the bill filed herein is for the enforcement of the order in its entirety. The enforcement of the order in its entirety would be the only effective remedy for the evil which the commission found to exist. I find, then, that the order, as an entirety, is beyond the power of the commission to make, and is therefore not a lawful order, and is not an order which this court is empowered by the statute to enforce.

It has been urged, in behalf of the commission, that the court has general equity powers in this cause to make such mandatory injunction, other than the enforcement of the order of the commission, as will satisfy justice. The act itself confines the action of this court to the enforcement of the lawful orders or requirements of the Interstate Commerce Commission. It has been frequently decided in the federal courts that, under the act, the function of the court is to enforce or refuse to enforce, the order of the commission as made; that the court cannot amend or modify an order, or make another order; that the federal court has no revisory power over the orders of the commission; and that it cannot undertake to decide whether the respondents have violated an order which the commission might lawfully have made. There is ample reason for this holding, in this: that the only standing in court which the Interstate Commerce Commission has as a complainant is by virtue of the statute, that it has no general equities in its favor, and that, consequently, the court must be confined, in its orders and decrees, when the Interstate Commerce Commission is a complainant, to the rights of recovery given to the commission by the statute. This view of the law of the case and the record renders it unnecessary to go into the question as to whether or not 30 cents per 100 pounds was an unreasonable freight charge for hay and straw. Taking into the consideration only the cost of carrying hay and straw, and their character as articles of transportation, as shown by the evidence, it is not clear at all that the rate of 30 cents per 100 pounds is an unreasonable and unjust freight charge. The contention of complainant is, rather, that charging a different freight rate for the carriage of hay and straw from the rate charged for the carriage of wheat is unfair discrimination against wheat. These articles are so different in their character, and the conditions of traffic with respect

to wheat are so entirely different from those which pertain to the carriage of hay and straw, that I am of the opinion that the fact that wheat is carried for a less rate than hay and straw is not proof that the higher rate charged for the carriage of hay and straw is unreasonable and unjust.

The bill is dismissed, with costs adjudged against the complainant.